## Charles Tourville *et ux.*

*v.*

## Jabez H. Pierson.

1. Jurisdiction of defendant in chancery—*how acquired.* By our practice in chancery, prayer for process against a person, and service of process upon him, give the court jurisdiction of that person, whether or not there be a formal prayer that he be made a defendant.

2. The homestead right—*when it exists.* The right to a homestead does not consist in purchasing property for a homestead, but in actually occupying it as such. Hence, when a bill for a forclosure alleged that the premises were not occupied as a homestead at the time of the execution of the mortgage, and the answer did not allege an occupation, but did allege that the complainant knew, at the time of such execution, that it was purchased as a homestead, the answer was not responsive to the bill, and there was no homestead.

3. Occupation—*under the homestead law, and what will constitute.* Where a tract of land was leased to a tenant, who raised a crop on it, but did not occupy the buildings which were upon it, while the owner and family lived on another and distinct tract of land, owned by them, of the value of sixteen hundred dollars, there is no such occupation of the tract so leased, as would defeat a mortgage executed at that time, by reason of the homestead law.

4. Lot of ground and the buildings thereon—*what constitutes.* Where a mortgage on the north twenty acres of an "eighty," was executed by parties

whose homestead where they then resided, and which was worth sixteen hundred dollars, was the south forty acres of the same "eighty," and the twenty acres lying between these two tracts had been previously sold by said parties, and deeded away, there the continuity between the forty and the twenty was broken, and it isolated the south end of the "eighty," making that "the lot of ground and the buildings thereon," which was the homestead.

5. OWNER OF HOMESTEAD—*may be the wife.* Where the title to the "lot of ground, and the buildings thereon " is in the wife, and she, with her husband and her family, reside thereon, that lot is the homestead.

6. ONE HOMESTEAD FOR EACH FAMILY. The law never contemplated that a head of a family can have two or more homesteads, one being his place of actual residence, the other being occupied by a tenant.

7. PURCHASE-MONEY—*no right of homestead exists against.* Where a mortgage on land was given to secure the purchase price, and the mortgagor intended, at the time, to make it a homestead, and afterward did actually remove to it, these facts did not make it the homestead of the mortgagor, so as to defeat the mortgage.

8. ACKNOWLEDGMENT BY A MARRIED WOMAN—*what is sufficient.* Where a married woman makes a deed to property, the fee of which is in her, and the improvements thereon belong to her husband, who joins in the same deed, and before the officer acknowledges that she executed the deed, this is substantially acknowledging it as her act and deed, and, although only her dower right was in terms released, still it is sufficient to pass the fee.

9. SAME—*is within the statute.* Under the law of 1853, commonly called the confirmatory law (see Laws 1853, p. 89), which provides that no informality or omission in setting forth the particulars of the acknowledgment shall make the same invalid, where it appears, in substance, from the certificate, that the parties executed the deed voluntarily; and, in case of a married woman, that she knew the contents of the deed, and had been examined separate from her husband, an acknowledgment like that above mentioned is sufficient.

The facts of this case fully appear in the opinion of the Court.

Mr. WILLIAM H. POGUE, for the plaintiffs in error.

Mr. H. W. BILLINGS, for the defendant in error.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This was a bill in chancery in the Circuit Court of Jersey county, brought by Jabez H. Pierson against Charles Tourville and Louisa A. Tourville, to foreclose a mortgage.

The bill is in the usual form, to which answers were required under oath. It is averred in the bill that, at the time the mortgage was executed, neither Charles Tourville or wife, or family, or any of them, were residing on the mortgaged premises, nor were they held or occupied as a homestead; and that the mortgage was executed to secure the payment of the purchase-money for the premises on a sale made by Pierson to Tourville, and that the sum of $403.33 was due and payable on the first two notes, and interest thereon at ten per cent. The bill prayed that defendants might be decreed to pay this amount, and concluded with a prayer for general relief.

The defendants in their answer say that, at the time, and long before the mortgage was executed, Louisa Tourville was the owner in fee of the land mortgaged; that defendants had leased the same to one J. T. Tourville, who had erected the buildings upon it, and for materials furnished the same he was indebted to the complainant, who, not having been paid therefor, prosecuted a suit in the Jersey Circuit Court to enforce a mechanic's lien upon the buildings for the amount of his claim, and obtained an order for the sale of the same, and caused the same to be sold, and he became the purchaser thereof; that complainant, after the purchase, leased the premises to one Dent, who held the same until the improvements were sold to defendant Charles Tourville, and for which the mortgage in suit was executed; that Louisa Tourville was owner in fee of the land, and when she executed the mortgage she had no intention to relinquish her claim to it, but only to relinquish such claim as she might have to the improvements upon it; that she did not, by her acknowledgment of the deed, relinquish any thing more than her dower right in the premises, having no intent or design to relinquish her estate in fee to the same. She admits the complainant has a right to sell the improvements on the land to satisfy his demand, as the notes were executed for the improvements, but denies his right to deprive her of her estate in fee therein by reason of the mortgage. The defendants charge that the complainant well knew at the time he made the sale to Charles Tourville that .the

property was purchased as a homestead for them, they being husband and wife, and living together as such; and they aver that, "as soon as they could," they took possession of the premises, and have from that time held possession thereof as their homestead, and they insist that no part of the demand in the mortgage mentioned was for the purchase-money of the real estate described in it. She asks that no decree shall pass for the sale of the land, but for the improvements only.

The answer was sworn to, and a replication filed.

On the part of the complainant, it was proved by Henry N. Pierson, that he, as agent of complainant, sold to Charles Tourville, the defendant, the premises mentioned, about the 15th of November, 1859, for the sum of six hundred dollars, to secure the payment of which he executed the mortgage and a note for thirty dollars. The premises consisted of twenty acres of land, with a store and dwelling-house thereon. The complainant did not own the fee in the land, but did own both the buildings, and the unexpired lease on the land, which had several years to run. At the time of the sale, the defendant and his wife were both living on a tract of land understood to belong to the wife, situate about half a mile south of the tract sold. At no time previous to the sale had the defendant and his wife occupied the mortgaged premises. Witness was present at the execution and acknowledgment of the mortgage, and nothing was said at the time by Mrs. Tourville in relation to the effect of the mortgage, and no reservation was made by her except such as are contained in the deed itself—that no part of the notes mentioned in the mortgage have ever been paid, and since the sale complainant has received none of the rents and profits of the premises.

The mortgage was dated November 15, 1859, and describes the premises as twenty acres of land off the north end of the west half of the north-west quarter of section thirty-four, in township seven north, in range eleven, west of the third principal meridian, in Jersey county, to secure three notes of even date, one for two hundred and thirty-six dollars and sixty-seven cents, due in two years; one for one hundred and sixty-six dol-

lars and sixty-six cents, due in three years, and one for one hundred and sixty-six dollars and sixty-seven cents, due in four years, all bearing interest at ten per cent. The notes were exhibited, corresponding with those described in the bill of complaint.

On the part of the defendants, it was shown by the testimony of Ann Stringham, the mother of Mrs. Tourville, that on the 15th of November, 1859, the defendants resided on the south forty of the eighty acre tract, on which are the mortgaged premises. Mrs. Tourville purchased this "eighty" in 1855 or 1856, with money obtained from her father's estate. On the 14th of November, 1857, the defendants leased, for the term of fifteen years, to Toussant Joseph Tourville, twenty acres off the north end of the "eighty." Mrs. Tourville had purchased the tract for a homestead, and built a house on the south part of it and lived in it until they purchased the house and store-house of complainant on the twenty acre tract leased to Toussant Tourville. Previous to the date of the mortgage in suit, the defendants sold, to one Hemphill, twenty acres off the south end of the north forty of this "eighty," lying between the twenty acres leased to Toussant and the south forty of the "eighty." About the last of July or first of August, 1859, Toussant Tourville surrendered to defendants the possession of the twenty acres leased to him, except the buildings, which were not inclosed by any fence, and were standing near the public road, within fifteen or sixteen yards of the line of the road. After the defendants took possession, they moved the fence from the outside and placed it on the back side of the buildings, so that the buildings were fenced off from the remainder of the twenty acres, leaving no fence between the buildings and the road. In the spring of 1859, defendants leased to one Chambers, the twenty acres, except the buildings, who put it in corn, and delivered one-third of the crop to defendants for rent. Chambers continued in possession from the spring of 1859, up to the time of the purchase by Charles Tourville from Pierson, on the 15th of November, 1859, and the defendants, three or four days after this purchase, moved into and

occupied the house thereon, and have lived there ever since. At the time of this purchase by Charles Tourville of complainant, his wife was the owner, in fee, of the land on which the house stood. Toussant Tourville surrendered the lease because he could not pay the rent, he considering he had thereby forfeited it.

The complainant then proved by Moses Cockerel that he knew this eighty acre tract, and that defendants resided on the south forty of it, up to the time of their moving into the house on the north end of the tract; that at the time of their removal the south forty was worth $1,600, and had been lately sold for $2,500. The south forty, when they resided on it, was owned in fee by Mrs. Tourville.

Joseph Chambers corroborated the testimony of Ann Stringham, as to his occupying there twenty acres in the spring of 1859 by putting in a crop upon it. He further said, that Toussant Tourville moved off the premises on the 28th day of April, 1859.

A point is made on the acknowledgment of the mortgage by Mrs. Tourville. It was as follows:

" STATE OF ILLINOIS, }
   MADISON COUNTY, } *ss.*

" Be it remembered, that on this 15th day of November, 1859, before me, John M. Pike, a justice of the peace in and for said county, came Charles Tourville and Louisa Tourville, personally known to me to be the real persons whose names are subscribed to the foregoing mortgage deed as having executed the same, and they acknowledged that they signed, sealed and delivered said deed voluntarily and freely for the uses and purposes therein mentioned, and the said Louisa A. Tourville being by me made acquainted with the contents and effect of said deed, and by me examined separate and apart from Charles Tourville, her husband, she acknowledged that she executed said deed and relinquished her right of dower in the premises therein described and set forth, freely and voluntarily and without the compulsion of her husband."

The court found to be due to complainant from the defendant, the sum of $634.66, and decreed a sale of the premises free from any homestead right of the defendants or either of them.

The defendants prosecute this writ of error and assign the following errors: The court erred in entering a decree to sell the fee of Mrs. Tourville in the land described in the bill of complaint. In decreeing a sale of the land, without requiring the homestead of the defendants therein, to be set apart to them. In rendering a decree against Louisa Tourville, as the bill nowhere prays that she be made a party defendant thereto.

The points chiefly relied on by the plaintiffs in error to reverse the decree, are, in ordering a sale of the premises free from any homestead right of the defendants or either of them; and decreeing a sale of the fee which was always in Mrs. Tourville and never conveyed by her. On the other point, that the court acquired no jurisdiction over Louisa Tourville to enter a decree against her, as the bill does not pray that she be made a defendant, it is only necessary to say, that, in our practice in chancery, prayer for process against a person, and service of process upon him, give the court jurisdiction of the person, whether or not there be a formal prayer that he be made a defendant.

Upon the first point made, that of a homestead right in the plaintiffs in error, the bill alleges that the premises were not occupied as a homestead at the time of the execution of the mortgage. The answer alleges that complainant knew at the time of the execution of the mortgage that the property was purchased as a homestead. The answer is not responsive to the charge in the bill. The charge is, that the premises were not occupied as a homestead at the time the mortgage was executed. The answer is, complainant knew the property was purchased as a homestead. That may be true, and yet no right of homestead exist. That right consists, not in purchasing property for a homestead, but in actually occupying it as such, which is not averred and proved in this case. Chambers did not occupy the premises, in the sense of the law, but merely

raised a crop of corn on the land, the buildings thereon not being inhabited by him. The facts show most conclusively, the homestead of the plaintiffs in error, at the time the mortgage was executed was upon the south forty of this " eighty," and was worth sixteen hundred dollars. That the continuity between this forty, and the twenty acres on the north end of the eighty, was broken by the sale of plaintiffs in error, to Hemphill of twenty acres, being the south half of the north forty. That tract, thus conveyed to Hemphill, isolated the south end of the eighty, and cut it off from any connection with the north end, thus making the south end, " the lot of ground and the buildings thereon," which the plaintiffs in error then occupied as a residence, and owned by Mrs. Tourville, who was a householder having a family, and of the value of one thousand dollars, the homestead. The law never contemplated, as the plaintiffs in error seem to contend, that a head of a family can have two or more homesteads, one being his place of actual residence, the other being occupied by a tenant. The homestead was the south forty, and Chambers' occupancy of the north forty by raising a crop, did not make that, also, a homestead. Nor did the removal to it by plaintiffs in error after the purchase from complainant, make it the homestead, so as to defeat him. That claim being set up, the complainant had a right to reply, the debt was incurred for its purchase, and therefore no homestead right.

The other question must be determined by our statute, and by reference to the decisions of this court, cited on the argument.

The question is, what did Mrs. Tourville convey by her deed and acknowledgment? By the deed she conveyed all her interest in the land, but by the acknowledgment, she released her dower right, in terms.

The doctrine of this court has ever been, that a certificate of acknowledgment is sufficient if it complies, substantially, with the requirements of the statute. The case of *Hughes et al.* v. *Lane,* 11 Ill. 123, reviews all the cases decided by this court on that point, and various decisions by courts of other States, and the conclusion is reached, that, in the case of Mrs. Lane, who

was conveying her own estate, an acknowledgment was sufficient, which was in substance the same as the one made by Mrs. Tourville. In both, dower is relinquished; and in both, the phrase, "does not wish to retract," is omitted. The court say, in our view, the words "does not wish to retract," are not necessarily a part of the acknowledgment, but are inserted in the statute to afford a married woman an opportunity to avoid a deed conveying away her real estate which she had voluntarily executed, if, at the time the officer takes her acknowledgment, she thinks proper to retract what she has done.

This deed, thus acknowledged, conveyed land owned by Mrs. Lane in her own right, and also land to which she had a dower interest only. The court do not decide that such an acknowledgment, where the real estate of the wife only is conveyed, would be sufficient, but they apply so much of the certificate as relates to the relinquishment of dower, to the lot in which there was a right of dower · and as to the rest of the certificate the court say :

"It is the execution of the deed, not the relinquishment of dower, that is acknowledged to have been made freely and voluntarily, without any compulsion of the husband, and this, together with the other statements of the certificate, as to privy examination and acquaintance with the contents of the deed, was sufficient to pass Mrs. Lane's interest in the land which she held in fee."

This decision was adhered to in *Garret et al.* v. *Moss et al.*, 22 Ill. 364, and in *Chester et ux.* v. *Rumsey*, 26 id. 97, it is referred to not in terms of disapprobation. But, aside from these decisions, is not the acknowledgment good under the act of 1853 commonly called the confirmatory law? That act provides, in substance, that no informality or omission in setting forth the particulars of the acknowledgment before the officer, in his certificate thereof, shall make the same defective or invalid, provided it appears in substance, from the certificate, that the parties executing the deed executed the same freely and voluntarily, and that, in case of a married woman

executing the same, it appears, in substance, that she knew the contents of the deed, and that she was examined by the officer separate and apart from her husband. Scates' Comp. 966.

This law conforms to the ruling in Mrs. Lane's case, and validates the acknowledgment of the mortgage in question as properly acknowledged by Mrs. Tourville so as to pass the fee. Acknowledging she executed the deed is substantially acknowledging it as her act and deed. *Stuart* v. *Dutton, ante,* 91.

What Mrs. Tourville's intentions may have been when she executed the mortgage, cannot now be scrutinized. It is in proof nothing was said at the time about the effect of the mortgage, nor did she make any reservation of any right, except such as may be found in the deed itself. The deed manifests her intention, and that is clearly expressed in it, to sell and convey all her right and title to the premises. This was explained to her by the magistrate, and she was privily examined, and these bring her case within the decision of *Hughes et al.* v. *Lane,* above cited. Perceiving no error in the decree, it must be affirmed.

*Decree affirmed*