PATRICK POWELL, Appellant, *vs.* JAMES D. POWELL *et al* Appellees.

*Opinion filed June 16, 1909.*

1. HOMESTEAD—*release and waiver of homestead does not prevent its revival.* A release and waiver of homestead, contained in a deed to homestead premises on which the grantor and his wife continue to reside during the time the title is held by the grantee, does not prevent the revival of the homestead in favor of the husband when the premises are conveyed to his wife by the grantee, and upon the wife's death the husband is entitled to an estate of homestead and to his dower interest.

2. EQUITY—*when bill to set aside a deed should be retained to assign homestead and dower.* A bill to set aside a deed from the grantor to his son upon the ground of the grantor's alleged want of mental capacity and to set aside a deed from the son to the grantor's wife, or, in the alternative, to assign homestead and dower to the complainant, the wife having died, should be retained to assign homestead and dower to which the complainant is entitled, even though the proof fails to sustain the averments of want of mental capacity to make the deed.

APPEAL from the Circuit Court of Peoria county; the Hon. N. E. WORTHINGTON, Judge, presiding.

SHEEN & MILLER, for appellant:

Delay will not bar relief in equity against fraud, where the injured party has been ignorant of the fraud practiced upon him until shortly before commencing his proceeding. *Bishop* v. *Thompson,* 196 Ill. 206; *Bragg* v. *Olson,* 128 id. 544.

In cases like the one at bar complainant is not required to prove the issue beyond a reasonable doubt or by evidence sufficient to convince the mind, but the law is satisfied with a less quantity of proof than would be demanded under other circumstances. *Prentice* v. *Crane,* 234 Ill. 310.

Making repairs on property, paying taxes thereon and otherwise exercising ownership thereof are circumstances to be considered in determining the rights of parties with reference to such property. *Benner* v. *Bailey,* 234 Ill. 81.

The fact that a father in feeble health, without consideration, transferred all his property to a child, leaving him in his old age penniless, with other children having claims upon him, will alone create a presumption that the conveyance is not what it purports to be. *Skahen* v. *Irving,* 206 Ill. 597; *Stahl* v. *Stahl,* 214 id. 131.

The bringing of a suit is a sufficient demand for homestead and dower, and the failure to assign the same and dismissing the complainant's bill for want of equity is not only ground for reversal, but entitles appellant to damages for a failure to assign. *Warner* v. *Warner,* 235 Ill. 470; *Bonner* v. *Peterson,* 44 id. 254.

JAMES A. CAMERON, for appellees:

Undue influence or fraud will not be inferred from the relation of parent and child, and is only inferred where the evidence discloses the fact that the natural relation is changed, so that the parent is subject to the dominion or to the controlling influence of the child, otherwise the burden of proof is on the complainant to establish the fraud or undue influence. *Francis* v. *Wilson,* 147 Ill. 370.

The fraud or undue influence which will avoid a deed must be connected with the execution of the instrument and operating when it is made. *Francis* v. *Wilson,* 147 Ill. 370; *Pooler* v. *Cristman,* 145 id. 405; *Guild* v. *Hall,* 127 id. 523.

Subsequent declarations of the grantor that he is satisfied with the deed are admissible, and if made after the un-

due influence or advantage taken of the grantor and after such influence has ceased, amount to a ratification of an instrument that was voidable. *Burt* v. *Quisenberry,* 132 Ill. 385.

Mr. JUSTICE VICKERS delivered the opinion of the court:

Prior to the year 1900 Patrick Powell was the owner in fee simple of a house and lot in Bradley's second addition to the city of Peoria, which he occupied with his family as a homestead. On September 19, 1900, Patrick Powell and his wife, Ann Powell, executed and delivered a deed to these premises to their son Daniel J. J. Powell, who is usually referred to in the record as James Powell. On September 5, 1904, James Powell executed a quit-claim deed to the premises in question to his mother, Ann Powell. Ann Powell died February 22, 1907, leaving Patrick Powell, her surviving husband, and Elizabeth Kaiser, Mary Fitzpatrick and Margaret Powell, her daughters, and James, Frank and William Powell, her sons, and Needa Powell, a grand-daughter of her deceased son, Cornelius Powell. After the death of his wife Patrick Powell filed a bill in the Peoria circuit court against the heirs of Ann Powell for the purpose of having the deeds to James Powell, and from James Powell to Ann Powell, set aside on the ground that he was mentally unable to comprehend the nature, character or effect of the deed at the time the same was executed to James Powell, and that the deed from James Powell to Ann Powell was executed in violation of the promise of James Powell to re-convey the premises to the complainant, and that there was no valuable consideration for either of said deeds. The bill also, by an amendment, charged that Patrick Powell was entitled to a homestead in said premises, and charged that the defendants had taken possession of all of the house except one small room, and that the complainant had been prevented, by abuse and personal

violence, from occupying and enjoying his homestead on said premises. The bill prayed, in the alternative, that if the court could not grant the cancellation of the deeds in accordance with the prayer of the bill, that complainant, as surviving husband of Ann Powell, be decreed to have a homestead in said premises to the extent of $1000 and dower in the residue, and that said homestead and dower be assigned to him.

All of the defendants except Elizabeth Kaiser answered both the original and amended bills and denied all of the grounds alleged for relief. After a replication was filed the cause was referred to a master in chancery, who, after taking evidence, reported a finding in accordance with the prayer of the bill, and recommended that the two deeds above referred to be set aside and annulled and that the fee simple title should be decreed to be in Patrick Powell. To this report the defendants below filed objections, which were overruled by the master. Upon a hearing in the circuit court upon exceptions to the master's finding the court sustained the exceptions except the last one, which presented the question whether Patrick Powell was a competent witness. The court held that the complainant was a competent witness, but all other exceptions were sustained and the bill was dismissed for want of equity. The complainant below has prosecuted an appeal to this court, and assigns for error the ruling of the court in sustaining the exceptions to the report of the master, in refusing to set off the homestead rights of complainant, and in dismissing his bill.

The evidence in regard to the mental condition of appellant on September 19, 1900, when the deed to his son was executed, is very conflicting. Appellant at that time was sixty-nine years of age. He was seriously ill, and had been for several weeks. His condition was so serious that the physician had despaired of his recovery and the priest of his church had been called in. It is shown that on the

afternoon before the deed was executed in the evening, his wife asked him to make a will and he agreed to do so. Elizabeth Kaiser, a daughter who was then living at home, testifies to the serious condition of her father at the time the deed in question was executed. She testifies that from five o'clock in the evening until the morning of the following day her father was irrational; that his mind wandered, and that unless restrained he would run out into the street after some imaginary foe; that he would tear pictures from the wall, disarrange the furniture and creep under the sofa looking for his brother who was dead, and that he cursed the bishop and priest of his own church when they called to advise with him about his spiritual welfare. This witness expressed the opinion that appellant was wholly incapable of comprehending the nature and effect of making a deed or will at the time the deed was executed. The witnesses Crowley, Barnes, Riley and McNamara all testified to having seen appellant on one or more occasions during his illness, and they all expressed the opinion that at the times these witnesses saw appellant he was apparently deranged. These witnesses, however, know nothing about the execution of the deed, and do not know when, with reference to that occurrence, they visited him. Dr. McIlvaine, who treated appellant during his illness, was unable to remember anything in connection with his treatment of the case except as his memory was refreshed from his books, which merely showed the different dates when he had visited the appellant, one of which appears to have been on the day the deed was executed. The physician's evidence throws no light upon the mental condition of appellant on the day in question. He is not even able to remember the disease for which he treated appellant.

Appellant testifies, in his own behalf, that he had no memory of having executed the deed in question; that he knew nothing in regard to his mental or physical condition during the greater portion of the time he was sick except

what he had been told by members of the family after his recovery. He testifies that he did not know that he had executed a deed to his son James until about four years after the deed was made, and that as soon as he learned of the conveyance he requested his son to re-convey to him and that he promised to do so, and, in pursuance of such promise, that his son assured him that he had re-conveyed the premises to appellant. The evidence shows that appellant is unable to read or write, and he testifies that he trusted his son James to make the deed as he had promised to do.

On behalf of appellees it is shown by the testimony of George T. Spurck, who prepared the deed and took the acknowledgment of the appellant and his wife, and also by Mr. Grigsby, who accompanied Mr. Spurck to appellant's residence on the occasion when the deed to James was executed, that these witnesses arrived at the Powell residence about eight o'clock in the evening, in answer to a telephone message requesting them to prepare a deed. The testimony of these witnesses is that the appellant was sitting up in a chair; that the subject of making the deed was talked over between the appellant, his wife and one of the sons; that their visit occupied about thirty minutes' time, during which other general conversation occurred which is not detailed by the witnesses; that the deed was read over by Mr. Grigsby in the presence of appellant and his wife and that appellant signed the deed by making his mark. These witnesses testify that appellant was apparently in the full possession of his mental faculties, and that there was nothing in his conduct or conversation that created any suspicion that he was unable to comprehend the nature of the business then being transacted. James Powell testifies that he was present at the time the deed was made to him by his father and mother; that the conveyance was made to him by his father because his father said that there was a man by the name of Maher who had a claim or judgment

against appellant, and he was afraid that there might be some attempt made to collect such claim out of the property; that he did not request his father to make the deed to him, nor did he know that such was his father's purpose until the evening the deed was made. He testifies that his father was not delirious and that he was capable of understanding what he was doing; that he was sick, but was entirely sane and rational at the time. Mrs. Fitzpatrick, a daughter of appellant, testifies that she was at her father's house the greater portion of the time during his illness in 1900; that she noticed nothing that would indicate that appellant was of unsound mind, and she expressed the opinion that his mind was sound. Frank Powell, a son of appellant who was then living at home with his father, testifies that his father was able to understand business matters during his illness and that he was not of unsound mind. This witness also testifies to conversations with his father as to the reasons for making this deed and corroborates the testimony of James Powell upon that subject. William Powell, another son, testifies that he resided at the home of his father during the year 1900; that he saw his father three or four times daily, and that he always seemed to understand and know what was going on during all the time that he was sick. This witness also testifies to the same reason for making the deed that is mentioned by his brothers.

From the foregoing review of the testimony it will be seen that there is a serious conflict upon the question as to the mental condition of appellant at the time the deed was executed. Upon the question as to why the conveyance was made to his wife instead of to appellant, in 1904, there is also a serious conflict in the testimony. As already shown, appellant testifies that he requested James to convey the title to him. This evidence, however, is not corroborated by any other witness. James Powell testifies that his father requested him to make the conveyance to his mother, and that he did so in accordance with his father's

wish.   Quite a number of other witnesses testify that appellant stated that he had caused or requested the conveyance to be made to his wife, and that he expressed himself as being entirely satisfied until after the death of his wife, in 1907.   We think that the weight of the evidence upon both these questions is with appellees.   There was therefore no error in sustaining the exceptions to the master's report.

But we are unable to see why appellant is not entitled to relief under the second prayer of his bill.   If, as the court below held, the title to this property was vested in appellant's wife at the time of her death and the premises were then occupied as a homestead, appellant became seized of an estate of homestead in the premises to the extent in value of $1000 upon the death of his wife.   This homestead appellant is entitled to occupy, if he so desires, free from molestation or disturbance during his life.   It is clear, under the proofs, that appellees have wrongfully prevented appellant from enjoying his full rights under the law.   The release and waiver of the homestead in the deed of September, 1900, would not prevent the revival of that estate when the fee was subsequently vested in appellant's wife. Under section 2 of the Homestead Exemption statute the homestead is continued for the benefit of appellant so long as he continues to occupy the same, and he is entitled to have such estate assigned and set off to him.   (*Tourville* v. *Pierson,* 39 Ill. 446.)   The circuit court should therefore have retained the bill for the purpose of assigning appellant's homestead and dower.

For the error in dismissing the bill for want of equity the decree of the circuit court of Peoria county is reversed and the cause remanded for further proceedings in accordance with the views herein expressed.

*Reversed and remanded.*